<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

THE STATE EX REL. STAPLE, APPELLEE, *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Staple v. State Emp. Relations Bd.*, Slip Opinion No. 2025-Ohio-4698.]**

*Mandamus—Labor relations—Public employees—R.C. Ch. 4117—State Employment Relations Board abused its discretion in dismissing public employee's unfair-labor-practice charge against employer because employer did not have authority to determine that employee's notice to arbitrate was untimely under collective-bargaining agreement—Board abused its discretion when it dismissed public employee's unfair-labor-practice charge against union without providing basic rationale for dismissal—Board did not abuse its discretion when it dismissed public employee's additional unfair-labor-practice charge against union, because union acted in accordance with public employee's waiver of union representation—Court of appeals' judgment granting writ of mandamus*

*affirmed in part and reversed in part.*

(No. 2024-0279—Submitted January 7, 2025—Decided October 15, 2025.)

APPEAL from the Court of Appeals for Franklin County,

No. 22-AP-78, 2024-Ohio-140.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., concurred in part and dissented in part and would affirm the court of appeals' judgment in full.

**Per Curiam.**

{¶ 1} Appellee, Christopher Staple, wanted to arbitrate when his employer, the Ravenna Police Department, fired him. Appellant Fraternal Order of Police, Ohio Labor Council, Inc. ("the union"), requested arbitration on his behalf. But appellant City of Ravenna asserted that it would deny that request because the union had asked too late.

{¶ 2} Staple maintained that an arbitrator—not the city—should have determined the timeliness of his notice to arbitrate. Additionally, Staple believed that any lateness in filing the notice was the union's fault. So, he charged the city and the union with unfair labor practices in separate cases before appellant State Employment Relations Board ("SERB" or "the board"). The board dismissed the charges for lack of probable cause.

{¶ 3} Staple petitioned the Eleventh District Court of Appeals for a writ of mandamus to compel the board to consider his charges on the merits. His mandamus action was transferred to the Tenth District Court of Appeals. The Tenth District held that the board had abused its discretion, and it granted the writ as to both cases Staple had brought before the board. The board, the city, and the union have appealed, and we now affirm in part and reverse in part.

**I.  FACTS AND PROCEDURAL HISTORY**

{¶ 4} While Staple was working for the Ravenna Police Department, he was accused of improper conduct.  After an investigation, he was fired in October 2020.  He protested this termination by filing a grievance in accordance with the process set out in the collective-bargaining agreement ("the agreement") between the union and the city.

{¶ 5} Under the agreement, the last stage of the internal grievance process is the mayor's review of the grievance.  Within ten days of the grievant's meeting with the mayor, the mayor must issue a written decision and send it to the grievant and the union.  The date of the mayor's decision starts the clock for purposes of calculating the time allowed for the union to submit the grievance to arbitration.  If the mayor fails to file a written decision by the end of the ten-day period, the grievance is deemed denied and the clock for submitting the grievance to arbitration starts.

{¶ 6} The agreement specifies at the beginning of the section titled "Arbitration Procedure" that "within thirty (30) calendar days" of the mayor's decision, the union "may submit the grievance(s) to arbitration."  The arbitration-procedure section does not include a definitions subsection, but the previous section of the agreement—setting forth the "Grievance Procedure"—includes a "Definitions" subsection that provides a definition for "Days."  It says, "A day as used in this procedure, shall mean calendar days, excluding Saturdays, Sundays, or holidays as provided for in this Agreement."  This definition aligns with the common understanding of a "business day."  *See, e.g.*, *Black's Law Dictionary* (12th Ed. 2024) (defining "business day" as "[a] day that most institutions are open for business, usu. a day on which banks and major stock exchanges are open, excluding Saturdays, Sundays, and certain major holidays").

{¶ 7} Shortly after his termination, Staple exercised his right to substitute his own counsel for the union's under R.C. 4117.03(A)(5).  He signed a waiver

releasing the union from "all duties of representation and liabilities arising out of the arbitration hearing to be held in reference to this grievance." (Capitalization deleted.)

{¶ 8} The mayor heard Staple's grievance on November 13, 2020, and denied it in a letter dated November 19. The next day, Staple received an email that the city alleges contained the mayor's denial letter as an attachment.

{¶ 9} Staple wanted to send the dispute to arbitration. The waiver that Staple had signed included a proviso stating that he expected that the union would still cooperate with him to get his case to arbitration. Staple's counsel, David Worhatch, and the union's counsel, Michael Piotrowski, had agreed that the union would cooperate with Worhatch to invoke Staple's right to arbitration on his behalf but that Worhatch would do the rest of the work arbitrating.

{¶ 10} After the mayor denied the grievance, Worhatch and Piotrowski discussed the deadline for the union's submission to the city of a notice to arbitrate. Piotrowski detailed the content of this discussion in a memorandum in opposition to a motion that Staple had submitted to the board.[1] He asserted that Worhatch had calculated that January 5 was 30 days after November 20. Presumably, that calculation was based on the definition of "Days" in the *grievance* procedure. Piotrowski maintained that he did not have a copy of the agreement in front of him during their discussion but that he had questioned the January 5 due date because it seemed far beyond when the union would usually file such a notice. Piotrowski claimed that he told Worhatch that he should "check his calculation." He further asserted that he had invited Worhatch to use the union's form version of the notice but that Worhatch insisted that he would draft a longer and more detailed notice himself.

---

1. At the conclusion of the memorandum in opposition that Piotrowski submitted on behalf of the union, he "certif[ied] and affirm[ed], under penalty of perjury, that the facts recited in the foregoing motion [were] true and correct t[o] the best of [his] personal knowledge and information."

**{¶ 11}** The parties dispute the deadline for submitting the notice to arbitrate. However, it is uncontested that 30 *calendar* days after November 20 was actually December 20, 2020, a Sunday. Assuming that the agreement follows the principles for counting time that are established in Ohio law, the deadline counted out in calendar days would be Monday, December 21. *See* R.C. 1.14 (when calculating the time in which a legal act may be done, "when the last day falls on Sunday . . . the act may be done on the next succeeding day that is not Sunday or a legal holiday"). Moreover, none of the appellants challenge Staple's assertion that under the agreement's definition of "Days" in the grievance-procedure section, 30 days after November 20 was January 5.

**{¶ 12}** Early in the morning on December 21, Worhatch emailed the union a copy of his notice to arbitrate. Neither the union nor Staple submitted this email into evidence before the board. According to the union, however, Worhatch asked the union to file the notice before January 5. The union sent a copy of the notice to the city two days after receiving Worhatch's email, on Wednesday, December 23.[2]

**{¶ 13}** On January 8, after the deadline had indisputably passed, the city responded. It refused to arbitrate, claiming that the union's notice was four days late. After Worhatch followed up with the city, the city clarified that because the union did not request arbitration within 30 calendar days, the city had determined that it need not submit to arbitration. The city rejected Worhatch's argument that the definition of "Days" in the grievance-procedure section of the agreement (i.e., "calendar days, excluding Saturdays, Sundays, or holidays") applied to the arbitration process set forth in the arbitration-procedure section of the agreement.

---

2. The union asserts that it sent both the notice to arbitrate that Worhatch drafted and its own "standard form notice" to the city. Staple asserts that the union "elected to use its own form." Nonetheless, both parties agree that the union sent notice to the city on Wednesday, December 23. Assuming that either notice would have sufficiently put the city on notice of Staple's intent to arbitrate, this opinion will refer to whatever version(s) the union sent as simply "the notice."

{¶ 14} Staple then tried to compel arbitration, but the Portage County Court of Common Pleas dismissed his complaint. *Staple v. Ravenna*, Portage C.P. No. 2021 CV 107, 2021 WL 7978900 (June 11, 2021). On appeal, the Eleventh District Court of Appeals affirmed, pointing out that Staple was not a party to the agreement and that he therefore could not compel arbitration without the union's assistance. 2022-Ohio-261, ¶ 28, 36 (11th Dist.). We declined jurisdiction. 2022-Ohio-1893.

{¶ 15} Meanwhile, Staple had also filed two sets of unfair-labor-practice charges with the board. The first was against the city. In it, Staple claimed that the city had denied him the right to have his grievance arbitrated, in violation of R.C. 4117.11(A)(1). Once the union filed the notice of arbitration, Staple argued, the city did not have the authority to unilaterally determine that the notice was filed too late for the grievance to be arbitrated. According to Staple, that determination went to the jurisdiction of the arbitrator, which, under the agreement (incorporating by reference the Labor Arbitration Rules of the American Arbitration Association), the arbitrator alone can decide.

{¶ 16} The second set of charges was against the union. Staple claimed that assuming the union had filed the notice to arbitrate too late, it failed to fairly represent him, in violation of R.C. 4117.11(B)(6). He also claimed that the union had caused the city to commit an unfair labor practice, a violation under R.C. 4117.11(B)(2).

{¶ 17} The board dismissed each charge after investigation. First, on Staple's charge against the city, the board determined that the city did not violate R.C. 4117.11(A)(1) by failing to move Staple's grievance to arbitration, because (1) the city "assert[ed] that the notice to arbitrate . . . did not follow the timelines established" by the agreement and (2) the notice was filed on Worhatch's instructions, so it was not the city's fault for "fail[ing] to process the request." *In re Staple v. Ravenna*, SERB No. 2021-ULP-03-0044 (June 3, 2021). Second, regarding Staple's R.C. 4117.11(B)(6) charge against the union, the board

concluded that because the union was just following Worhatch's instructions for filing a notice to arbitrate, "any alleged failure to process the request was not on the part of the Union." *In re Staple v. Fraternal Order of Police, Ohio Labor Council, Inc.*, SERB No. 2021-ULP-03-0045 (June 3, 2021). The board did not rule on Staple's charge that the union had violated R.C. 4117.11(B)(2).

{¶ 18} After the board denied Staple's motions for reconsideration in each case, Staple petitioned the Eleventh District for a writ of mandamus, naming the board, the city, and the union as respondents. His complaint asked the court to compel the board to vacate its decisions and consider his charges on the merits. Staple's case was transferred to the Tenth District after the Eleventh District held that because the board's principal place of business was in Franklin County and the union and the city were "nominal parties," the Tenth District was the proper venue. No. 2021-P-0115, 2 (11th Dist. Jan. 24, 2022).

{¶ 19} Staple's case was assigned to a magistrate, who recommended that the Tenth District grant mandamus relief. After considering the respondents' objections to the magistrate's decision, the appellate court determined that the board had committed legal errors in finding a lack of probable cause to believe that (1) the city committed an unfair labor practice by failing to submit the timeliness question to arbitration and (2) the union committed an unfair labor practice when it allegedly delayed in filing the notice to arbitrate. 2024-Ohio-140, ¶43, 96 (10th Dist.). For each case, the court granted a writ of mandamus "directing SERB to vacate its order dismissing the [unfair-labor-practice] charge . . . , issue an order finding that probable cause exists to believe an [unfair labor practice] has been committed, and commence further proceedings as appropriate in accordance with such determination." *Id.* at ¶43. The court also granted a limited writ requiring the

board to rule on the R.C. 4117.11(B)(2) charge against the union. *Id.* The board, the union, and the city now appeal.[3]

## II. ANALYSIS

{¶ 20} SERB has jurisdiction to adjudicate unfair-labor-practice charges under R.C. Ch. 4117. R.C. 4117.12. When a public employee files a charge against an employer or union alleging an unfair labor practice, the board "must investigate the charge and determine whether there is probable cause to believe a violation occurred." *State ex rel. Murray v. State Emp. Relations Bd.*, 2018-Ohio-5131, ¶ 8, citing R.C. 4117.12(B). If the board has a "reasonable ground to believe that an unfair labor practice has occurred," it must issue a complaint and conduct a hearing on the charge. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 2002-Ohio-2839, ¶ 38; *see id*. at ¶ 37, quoting *Black's Law Dictionary* (7th Ed. 1999) ("'Probable cause' is not defined in R.C. Chapter 4117, so it must be accorded its ordinary definition. 'Probable cause' is normally referred to in the context of the commission of a crime and it is defined as 'a reasonable ground to suspect that a person has committed or is committing a crime.'").

{¶ 21} The board's probable-cause determination on an unfair-labor-practice charge cannot be reviewed on direct appeal. *Id.* at ¶ 35. Thus, because there is no adequate remedy in the ordinary course of law, a party may seek a writ of mandamus after the board dismisses its charge. *Id*. The writ will issue only if the board has abused its discretion in dismissing an unfair-labor-practice charge. *Id.*; *see also State ex rel. Alben v. State Emp. Relations Bd*., 1996-Ohio-120, ¶ 9 ("In order to be entitled to the requested writ of mandamus compelling SERB to vacate its dismissals, issue a complaint, and hold a hearing on the charges, [the]

---

3. Staple also sought declaratory relief, which the Tenth District denied. 2024-Ohio-140 at ¶43, 95-96 (10th Dist.). This part of the ruling was not challenged on appeal.

relators must . . . establish that SERB abused its discretion in dismissing the unfair labor practice charges.").

{¶ 22} On appeal of a judgment granting or denying mandamus relief, we apply the same standard of review as the court of appeals: abuse of discretion. *See Murray* at ¶ 6, 9. When the board has dismissed a charge for lack of probable cause, we will overturn that determination only if it was unreasonable, arbitrary, or unconscionable. *See State ex rel. Service Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 1998-Ohio-463, ¶ 15-16; *see also Portage Lakes Edn. Assn.* at ¶ 39-41 (a probable-cause issue is one of fact, and a reviewing court will not substitute its judgment for SERB's when the evidence on an issue conflicts); *compare Portage Lakes Edn. Assn.* at ¶ 68 (denying writ against SERB when its dismissal of unfair-labor-practice charges was consistent with its labor-relations specialist's recommendation and "no internal documents or testimonial admissions of [the charged party] establish[ed] that the only reasonable decision by SERB would be findings of probable cause" on the charges). Nonetheless, no adjudicative body has discretion to make a legal error. *See Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39 ("We take this opportunity to make it clear that courts lack the discretion to make errors of law . . . ."). So, if the board has committed legal error or if it acted unreasonably, arbitrarily, or unconscionably in dismissing a charge for a lack of probable cause, it has abused its discretion.

{¶ 23} Staple raised three issues before the Tenth District that are relevant to our analysis. First, did the board abuse its discretion when it failed to find probable cause to support an unfair-labor-practice charge against the city? The city refused to submit to arbitration. It calculated the deadline for the union to file a notice to arbitrate as December 21, 2020. The notice was filed on December 23. Staple contended that the city's calculation of the deadline was wrong and that it should have at least submitted the issue of timeliness to an arbitrator.

{¶ 24} Second, did the board abuse its discretion when it failed to resolve one of Staple's charges against the union? Staple alleged two charges against the union: one under R.C. 4117.11(B)(2) and one under R.C. 4117.11(B)(6). The board's decision mentioned both in the introductory paragraph, but it did not resolve the charge alleged under R.C. 4117.11(B)(2).

{¶ 25} Third, did the board abuse its discretion when it failed to find probable cause to support Staple's R.C. 4117.11(B)(6) charge against the union? This charge arose from the union's decision to wait until December 23 to file the notice to arbitrate. Staple asserted that the union should have filed sooner because it had access to the agreement and could have checked the deadline Worhatch had calculated and because Worhatch sent the union his version of the notice on December 21.

{¶ 26} The Tenth District resolved all three issues in Staple's favor and granted the requested writ of mandamus. We reverse the Tenth District's judgment to the extent that it granted a writ as to the R.C. 4117.11(B)(6) charge against the union, because Staple's waiver absolved the union of its duty to calculate deadlines. We affirm the Tenth District's judgment to the extent that it granted a writ as to the other two charges.

## A. Staple's motion to dismiss errs on the law

{¶ 27} As an initial matter, Staple moved to dismiss this appeal for want of a final, appealable order. He claims that his postjudgment motion before the Tenth District for attorney's fees and costs remains unresolved and that the court of appeals' judgment is therefore not final and appealable. Staple asked for court costs and attorney's fees under R.C. 2335.39 in his mandamus complaint. And following the Tenth District's judgment in his favor, he moved in that court for an award of attorney's fees and expenses from the board under both R.C. 2335.39 and R.C. 2323.51.

**{¶ 28}** When there is an unresolved claim for attorney's fees in a case, an order resolving other claims is generally not final and appealable unless the trial court determines, according to Civ.R. 54(B), that there is no just reason for delay. *See* R.C. 2505.02 and 2505.03; Civ.R. 54(B). Our precedent confirms this. *See Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 2007-Ohio-6439, paragraph two of the syllabus ("When attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ.R. 54(B), an express determination that there is no just reason for delay, is not a final, appealable order.").

**{¶ 29}** Here, Staple initially requested the attorney's fees available to a prevailing litigant under R.C. 2335.39, which provides for an award of attorney's fees under certain circumstances when the State is a party. Staple's complaint also contained a general plea for reasonable attorney's fees as "otherwise . . . may be provided by law." Then, in his motion after judgment in the court of appeals, Staple requested attorney's fees based on both R.C. 2335.39 *and* R.C. 2323.51.

**{¶ 30}** Staple's motion to dismiss fails for two reasons. First, his claim for attorney's fees under R.C. 2323.51 is not an unresolved claim. He did not ask for attorney's fees under R.C. 2323.51 in his complaint. Instead, he made a new claim under that section after the judgment was issued. The Tenth District could not have ruled on a motion for attorney's fees under R.C. 2323.51 that was not before it when it entered judgment. So, Staple's R.C. 2323.51 claim has no bearing on whether the Tenth District's resolution of his claims was final.

**{¶ 31}** Second, Staple's unresolved claim for attorney's fees under R.C. 2335.39 does not prevent a final judgment either. R.C. 2335.39(B)(1) states a precondition for receiving damages in appropriate cases: the "prevailing eligible party" must file a motion requesting the award of attorney's fees "after the court enters final judgment in the action or appeal." A request for attorney's fees under R.C. 2335.39, therefore, presupposes a final judgment. Because this claim cannot

be resolved until there is a final judgment, it cannot prevent a final, appealable order, as Staples argues. We therefore deny Staple's motion to dismiss for lack of a final, appealable order.

**B. The board committed legal error in resolving Staple's charge against the city**

{¶ 32} Staple's unfair-labor-practice charge against the city accused it of "[i]nterfer[ing] with, restrain[ing], or coerc[ing] [him] in the exercise of the rights guaranteed in [R.C.] Chapter 4117," an unfair labor practice under R.C. 4117.11(A)(1). In response to a request for information from the board, Staple alleged that once the union sent the city its notice to arbitrate, the city had to arbitrate at least the procedural question of timeliness. Instead, the city outright refused to submit to arbitration.

{¶ 33} An arbitrator has discretion to determine matters of procedural arbitrability, such as timeliness, unless there is "'positive assurance' that the dispute was not susceptible of arbitration." *Council of Smaller Ents. v. Gates, McDonald & Co.*, 1998-Ohio-172, ¶ 22-33. And here, the arbitrator also explicitly has that discretion based on the agreement's incorporation of the Labor Arbitration Rules of the American Arbitration Association. *See* Rule 3a of the American Arbitration Association's Labor Arbitration Rules, available at https://adr.org/media /izfl4pme/labor-rules.pdf (accessed June 17, 2025) ("The arbitrator shall have the power to rule on his or her own jurisdiction.").

{¶ 34} In arguing before the board that the city's decision to refuse arbitration was an unfair labor practice, Staple first made a factual contention, claiming that he never received the notice of the mayor's denial of his grievance by hand delivery or certified mail, as he claimed he had requested. Staple asserted that his receipt of the mayor's denial was required to start the clock on the 30-day period to submit his notice to arbitrate. The board's investigator, however, brushed over this dispute and found credible the city's contention that Staple received an email

with the mayor's denial letter attached on November 20, 2020. Staple renewed this argument before the Tenth District, expanding it to include his assertion that the email did not actually contain the mayor's denial letter as an attachment. The Tenth District did not consider this argument, and Staple now renews it before us.

{¶ 35} The city presented to the board evidence showing that the mayor denied the grievance in a letter dated November 19. It also presented a scanned copy of an email that the police chief sent Staple on November 20. This email indicates that a PDF file containing the mayor's denial letter was attached when the police chief later forwarded the email to counsel for the city, though it does not specify that the same file was attached to the original email that the police chief sent Staple. Nevertheless, although a reasonable board could have found otherwise on the facts presented, we do not find the board's acceptance of November 20 as the date of Staple's receipt of the mayor's denial letter to be unreasonable, and we therefore find no abuse of discretion here. *See Portage Lakes Edn. Assn.*, 2002-Ohio-2839, at ¶39-41. Accordingly, we adopt the board's finding that Staple received some form of notice of the mayor's decision on November 20, 2020.

{¶ 36} Once the board determined the point at which Staple learned that his grievance had been denied and that he would need to pursue arbitration, there was no factual dispute on this charge remaining before the board. The board, however, still made a series of legal determinations to reach its conclusion that the December 23 notice to arbitrate was untimely. Staple argues that the board's implicit decision to deem the mayor's denial "filed" as of November 20, thereby justifying the city's decision not to arbitrate, impermissibly treads on the role of the arbitrator to interpret the agreement in the first instance.

{¶ 37} Though accepting that the city sent Staple an email on November 20 with an attachment is a factual determination, the board implicitly interpreted the terms of the agreement to conclude that the city correctly determined that the December 23 notice to arbitrate was untimely. The agreement states that the clock

for filing a notice to arbitrate starts with "the rendering of the decision at Step 3 or a timely default by the Employer at Step 3," referring to the mayor's review of the grievance. To prevent a default on the part of the city, the mayor was required to "timely file a response" to the grievance. Though the term "file" is not defined in the agreement, the agreement elsewhere says that the mayor must "render his decision in writing *and* deliver to the grievant and the [union] his written decision." (Emphasis added.) The agreement does not specify how the written decision must be delivered to the grievant and the union.

{¶ 38} The board determined that the notice to arbitrate was late. To do so based on the agreement, the board logically had to conclude (1) that the mayor's denial letter dated November 19, 2020, and the email sent to Staple on November 20, 2020, counted as "filing" a response to the grievance so that the city never defaulted and (2) that the 30-day clock for submitting a notice to arbitrate started either (a) on November 19, 2020, the date that the mayor placed on his denial letter or (b) on delivery of the written decision to Staple and the union, which was effected either by the email Staple received on November 20, 2020, or by some other means not in the record before November 23, 2020.

{¶ 39} In so interpreting the agreement, the board erred. The issue the board should have considered is not whether the notice to arbitrate was timely but, rather, *who decides* whether it was timely based on the agreement. An arbitrator might have ultimately found that the city's method to "render and deliver" the mayor's written denial to both Staple and the union sufficed and that the union's notice was therefore late. But the agreement makes clear that an arbitrator should make that call in the first instance, as arbitration hearings "shall be conducted pursuant to the Rules and Regulations of the American Arbitration Association," which in turn recognize that an arbitrator "shall have the power to rule on his or her jurisdiction." Rule 3a of the American Arbitration Association's Labor Arbitration Rules, available at https://adr.org/media/izfl4pme/labor-rules.pdf (accessed June 17,

14

2025). Under the terms of the agreement, therefore, a party to the agreement may not unilaterally decide that the notice was late; only an arbitrator may do so.

{¶ 40} The city agreed to submit grievances to arbitration upon receiving notice to arbitrate. The union filed a notice to arbitrate. The city could have asserted before the arbitrator its argument that the arbitrator should dismiss the matter for lack of jurisdiction because the notice was late, but it was not within the city's discretion to refuse arbitration based on its own interpretation of the agreement.

{¶ 41} Since the board disregarded the procedure set forth in an agreement entered into under R.C. Ch. 4117, it rendered a decision outside the bounds of its discretion under the law. We conclude that on the face of the agreement, an arbitrator should have ruled on the timeliness of the notice to arbitrate and that the city's refusal to submit this issue to an arbitrator provided at least probable cause to believe that the city committed an unfair labor practice. We therefore affirm the Tenth District's judgment to the extent that it granted a writ of mandamus requiring the board to issue a complaint and conduct a hearing on this charge.

### C. The board erred in ignoring one charge against the union

{¶ 42} Staple charged the union with "[c]aus[ing] or attempt[ing] to cause" the city to commit an unfair labor practice, a violation of R.C. 4117.11(B)(2). As noted above, the board did not substantively address this alleged violation its decision.

{¶ 43} The board does not have to issue findings of fact, but if it fails to address a charge entirely, a limited writ of mandamus may issue to require SERB to consider the charge and give its reasoning for not issuing a complaint. *See State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, AFL-CIO v. State Emp. Relations Bd.*, 1992-Ohio-119, ¶ 11-13 (this court could not assess whether the board had acted arbitrarily when it summarily dismissed a charge as untimely filed); *compare Collins v. Collins*, 2011-Ohio-2087, ¶ 41 (9th Dist.) (a trial court need not

address every factor it considered in its analysis when writing its judgment entry, but "it is axiomatic that a reviewing court should be able to discern [the trial court's] reasons"). In short, the board may not have to make a full factual determination at this stage, but it does have to provide a basic rationale when it dismisses a charge. Its failure to do so here justifies the Tenth District's issuance of a limited writ requiring the board to "consider all facts and circumstances relevant to the alleged violation of R.C. 4117.11(B)(2), and to issue a new order explaining the reasoning for its decision on that charge," 2024-Ohio-140 at ¶ 43 (10th Dist.). We therefore affirm that portion of the Tenth District's judgment.

### D. The board did not abuse its discretion in applying Staple's waiver

{¶ 44} Staple also charged the union with a violation of R.C. 4117.11(B)(6) for "[f]ail[ing] to fairly represent" him as a public employee in its bargaining unit. In establishing probable cause in support of this violation, "the charging party bears the initial burden of showing that the union acted arbitrarily by failing to take a basic and required step." *State ex rel. Fuller v. State Emp. Relations Bd.*, 2011-Ohio-1599, ¶ 28 (10th Dist.). If the charging party meets this burden, "a presumption arises that the union acted arbitrarily," and the "union can rebut this presumption with evidence of a justification or viable excuse for its action or inaction." *Id.*

{¶ 45} Staple established that it was the union's responsibility to timely file a notice of arbitration. Under the agreement, if the union chose to arbitrate, any failure to file a notice to arbitrate in a timely manner would be a violation of R.C. 4117.11(B)(6); untimeliness constitutes a "failure to take a basic and required step." *In re OSCEA/AFSCME, Local 11*, SERB No. 98-010, at 3-58 (July 22, 1998). The union was also capable of calculating the deadline to file and knew that Staple intended to arbitrate. The union has never claimed otherwise. Under the board's precedent, then, Staple satisfied his initial burden. *See id.*

16

{¶ 46} The burden then shifted to the union to explain itself. It responded that Staple had signed a waiver, freeing the union of its obligation to support him. The union claimed that because of that waiver, it no longer had a duty to calculate the timeliness of the filing of Staple's arbitration notice.

{¶ 47} The terms of Staple's waiver explicitly hold the union "harmless from all duties of representation and liabilities arising out of the arbitration hearing to be held in reference to this grievance and all subsequent proceedings." (Capitalization deleted.) The waiver also specifies that Staple "agree[d] to waive [his] right of representation by the [union]." (Capitalization deleted.) Staple's waiver further states, "I understand that the [union] will cooperate in any appropriate manner consistent with this agreement and the applicable collective bargaining agreement to which it is a party to secure my right to arbitrate."

{¶ 48} The waiver clearly frees the union from having to represent Staple at the arbitration proceedings. Staple, however, did not waive at least one right that imposes a corresponding duty on the union: the right to its aid in bringing his grievance to arbitration. And because of the limitation on what rights Staple waived, the union retains its duty to "cooperate in any appropriate manner" to ensure that Staple can arbitrate if he so desires. Moreover, the waiver acknowledges that there will likely be an arbitration hearing, as the union is indemnified from an arbitration hearing "*to be held* in reference to this grievance." (Capitalization deleted and emphasis added.) So, although the union is indemnified from any negative effects that may arise from the hearing, it has not been absolved of its responsibility to timely file a notice to arbitrate. If the union had failed in this remaining duty, there could be grounds to suggest that it failed to represent Staple as required under R.C. 4117.11(B)(6).

{¶ 49} The board found that the union had "complied with its agreement with Mr. Staple to submit a notice to arbitrate and did so per the instructions of Mr. Staple and his representative." In his report, the board's investigator highlighted

that Worhatch declined the union's offer to file the notice in late November 2020, insisting on drafting his own. The investigator also pointed out that Worhatch sent the notice to the union on December 21, with instructions to file it before January 5, 2021. The union filed the notice to arbitrate on December 23.

{¶ 50} The board determined that "any alleged failure to process the request was not on the part of the Union." To reach this determination, the board must have implicitly found that the union's efforts fulfilled any remaining obligations it had to Staple that he had not waived. Thus, the board accepted that the union's decision to merely follow Worhatch's filing instructions was sufficient cooperation and that any errors in timing were therefore Staple's fault.

{¶ 51} The Tenth District concluded otherwise. It found that the union's duty to cooperate required more than following Worhatch's instructions. 2024-Ohio-140 at ¶ 41 (10th Dist.). The court reasoned that if the union independently knew or had reason to know that the correct filing deadline was December 21, then the union violated its duty to Staple when it failed to timely file a notice to arbitrate. *Id.* Although Staple waived representation, the Tenth District found that the union retained a duty to assist in the arbitration process by filing a timely notice, as this was the union's "sole and exclusive responsibility" under the agreement. *Id.* at ¶ 35. The court found that this duty included a responsibility to check the deadline, independent of Worhatch's miscalculated due date. *Id.* at ¶ 41. The Tenth District concluded that the board abused its discretion when it dismissed this charge on the basis that the union was merely following Worhatch's calculations.

{¶ 52} We disagree. Staple made clear that he did not want the union to run the show; rather, he wanted it to play only the limited part he needed so that his counsel could proceed in representing him. The union agreed only to cooperate with outside counsel and accepted that Staple did not want its aid beyond that. The union ceded to Worhatch's judgment, trusting him to run his client's case aright. In doing so, it stayed in line with Staple's waiver. The board, therefore, did not

18

abuse its discretion when it dismissed this charge against the union, and the Tenth District was wrong to hold otherwise. We therefore reverse the Tenth District's judgment to the extent that it granted a writ of mandamus as to the R.C. 4117.11(B)(6) charge against the union.

### III. CONCLUSION

{¶ 53} For the foregoing reasons, we deny Staple's motion to dismiss for want of a final and appealable order and we affirm the judgment of the Tenth District Court of Appeals with regard to the unfair-labor-practice charge against the City of Ravenna and the board's failure to address the R.C. 4117.11(B)(2) charge against the Fraternal Order of Police, Ohio Labor Council, Inc. We reverse, however, the appellate court's judgment with respect to the R.C. 4117.11(B)(6) charge against the union.

{¶ 54} The board shall therefore vacate its order dismissing the unfair-labor-practice charge against the city, issue an order finding that probable cause exists to believe that an unfair labor practice has been committed, and commence further proceedings as appropriate in accordance with that finding. And the board shall consider the union's alleged violation of R.C. 4117.11(B)(2) and issue a new order explaining the reasons for its decision on that charge.

Motion to dismiss denied,
and judgment affirmed in part
and reversed in part.

_____

Law Offices of S. David Worhatch and S. David Worhatch, for appellee.

Dave Yost, Attorney General, and Lori J. Friedman, Assistant Attorney General, for appellant State Employment Relations Board.

Zashin and Rich Co., L.P.A., and Scott H. DeHart, for appellant City of Ravenna.

Michael W. Piotrowski, for appellant Fraternal Order of Police, Ohio Labor Council, Inc.

_____